***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Homick and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of Deputy Commissioner Homick.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act, and the North Carolina Industrial Commission has jurisdiction of the parties and of the subject matter.
2. An employee-employer relationship existed between plaintiff and defendant-employer at the times in question.
3. There is no question as to misjoinder or nonjoinder of the parties.
4. Defendant is self-insured, with Corvel Corporation as the third-party administrator.
5. The following exhibits were admitted into evidence:
 a. Exhibit 1: Pre-Trial Agreement;
 b. Exhibit 2: Compilation of documents, including Industrial Commission forms and plaintiff's medical records; (pages 1-124 and second volume paginated from 117-242) [error in pagination];
 c. Exhibit 3: Plaintiff's timesheets and work restrictions
6. The issues before the Industrial Commission are whether plaintiff sustained an injury by accident on January 14, 2008, and, if so, to what benefits is plaintiff entitled; and the determination of plaintiff's average weekly wage.
 ***********
Based upon the all of the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 54 years old. Plaintiff graduated from high school and has taken a course in cosmetology. *Page 3 
2. On August 18, 2003, plaintiff commenced work for defendant as a housekeeper. Plaintiff was assigned to work on defendant's campus from 4:00 p.m. to 12:00 a.m. Plaintiff's job duties included removing trash from offices and classrooms, cleaning white boards, vacuuming, mopping, cleaning light fixtures and other duties as assigned.
3. At approximately 10:00 p.m. on January 14, 2008, plaintiff bent over to pick up a three to four gallon mop bucket to pour the water into a drain. Plaintiff indicated that the wheels on the bucket caused it to slip away and plaintiff twisted as she attempted to grab it.
4. Plaintiff stated that she felt immediate pain in her lower back and right hip. Plaintiff further stated that she thought perhaps she had injured her kidneys, as she was previously diagnosed with kidney stones. Although plaintiff stayed at work for the remainder of her shift, she rested on a bench in the hallway and another employee assisted in putting away her cleaning supplies.
5. Plaintiff reported the incident to her supervisor and returned to work the next day. By the second day, plaintiff's back pain had not diminished. Plaintiff then presented to her family doctor, Dr. Steven W. Queen, on January 17, 2008, the third day following the incident.
6. Dr. Queen diagnosed plaintiff with sacroiliitis with associated lumbar pain and prescribed Oxycodone and Skelaxin to ease her symptoms. Dr. Queen's notes indicate that plaintiff reported injuring her back when she lifted a mop bucket three weeks ago. The Full Commission finds this discrepancy in time to have been a mistake of recording "three weeks" instead of "three days," as all other records are consistent with plaintiff's testimony. Dr. Queen referred plaintiff for an MRI due to the acuteness and sudden onset of her back pain.
7. Due to plaintiff's severe pain, Dr. Queen also referred plaintiff to Dr. Jon M. Silver, a neurologist, for an emergency evaluation. On January 24, 2008, plaintiff presented to *Page 4 
Dr. Silver with complaints of severe and constant lower back pain, which radiated down the back of her right leg. Dr. Silver noted that the MRI revealed a suspicious small disc protrusion far laterally to the right at the L3-4 level. Dr. Silver diagnosed plaintiff with back and right leg pain and recommended physical therapy and an epidural injection at the L5-S1 level. Dr. Silver released plaintiff from work for four weeks until he could re-evaluate plaintiff's symptoms at her next appointment on March 3, 2008.
8. Defendant filed a Form 63 Notice to Employee of Payment ofCompensation Without Prejudice with the Industrial Commission on January 31, 2008, and commenced the payment of temporary total disability benefits on February 1, 2008.
9. Due to severe back pain, on February 5, 2008, plaintiff presented to Dr. Silver, which was earlier than her previously scheduled appointment. The epidural injection recommended by Dr. Silver had been denied by defendant and although plaintiff had one physical therapy session, she indicated that it seemed to make her pain significantly worse. Dr. Silver noted mild degenerative changes at L5-S1, without nerve root compression, and a small far lateral disc protrusion at L3-4 adjacent to the L3 nerve root. Dr. Silver recommended another MRI and the lumbar epidural injection.
10. On March 3, 2008, plaintiff returned to Dr. Silver, who noted that plaintiff had a marked decrease in her range of motion in her back, "give-way" weakness in both legs, and severe pain that prevented plaintiff from participating in most activities. However, Dr. Silver opined that unless something significant appeared on the second MRI, there was nothing surgically that he could do to relieve her back pain. As a result, he referred plaintiff to Dr. Margaret Burke, a physiatrist, for treatment and continued to restrict plaintiff from working until she could be evaluated by Dr. Burke. *Page 5 
11. Plaintiff presented to Dr. Burke on March 28, 2008, and again on April 28, 2008. Dr. Burke opined that plaintiff's history and physical examination were consistent with an acute right sacroiliac strain that occurred when plaintiff bent and twisted while lifting the mop bucket on January 14, 2008. Dr. Burke continued to keep plaintiff out of work due to her January 14, 2008 work injury.
12. Defendant filed a Form 61 Denial of Workers' CompensationClaim dated March 4, 2008, with the Industrial Commission and terminated plaintiff's temporary total disability and medical benefits. Despite the denial of her claim, plaintiff continued to require and sought treatment for her lower back pain.
13. In an April 17, 2008, note, Dr. Queen opined that plaintiff suffered L3-4 and L4-5 diskitis, which occurred as a result of the January 14, 2008 work accident. As of May 8, 2008, Dr. Queen continued to restrict plaintiff from working due to her right sacroiliitis "until further notice."
14. As plaintiff continued to experience lower back pain with a radicular component on her right side, her primary care physician, Dr. Queen, referred her to Spine Carolina for a second opinion. On June 26, 2008, plaintiff presented to physician's assistant Thomas Figura. Mr. Figura noted that plaintiff presented with right S1 joint discomfort. He also noted that the MRI revealed mild degenerative changes at L3-4, L4-5 and lesser at L5-S1, with a diffuse disk bulge at L3-4, without any central, recess or foraminal stenosis. Mr. Figura recommended an EMG nerve conduction study and possible referral to a pain management specialist.
15. Dr. Laura Fleck, a neurologist, performed the EMG, which was unremarkable for a cause of plaintiff's right lower extremity radiculopathy. *Page 6 
16. Dr. Burke continued to keep plaintiff out of work and on May 27, 2008 released plaintiff from work "indefinitely" due to plaintiff's symptoms from the January 14, 2008, work injury. Plaintiff continues to be employed by defendant and is on leave-without-pay status.
17. On August 12, 2008, Dr. Mark L. Moody, an orthopedic surgeon, administered a right S1 injection to plaintiff in an effort to reduce her ongoing lower back pain. Plaintiff tolerated the procedure well but only received mild improvement in her pain after the injection.
18. With regard to causation, Dr. Jon Silver opined to a reasonable degree of medical certainty that plaintiff's pain was related to her January 14, 2008 work incident, based on the facts as relayed to him. The evidence of record indicates that plaintiff's explanation of the events causing her injury was accurate and, therefore, it was reasonable for Dr. Silver and the other doctors to consider plaintiff's explanation of what occurred on January 14, 2008, in formulation of their causation opinions.
19. Dr. Mark Moody, an orthopedic surgeon, stated to a reasonable degree of medical certainty that plaintiff sustained a lumbar sprain as a result of her January 14, 2008 work-related injury. He indicated that people can have non-compressive radiculitis, which means that they can sprain their backs, causing injury to the disk, which can then release neural or chemical irritants that irritate the nerve even when there is no mechanical pressure. Accordingly, Dr. Moody opined that plaintiff had some type of chronic lumbar sprain/strain syndrome as a result of her work injury.
20. On the issue of plaintiff's continuing disability, Dr. Silver opined that he would have expected plaintiff's back pain to have resolved in a few weeks after the injury. However, he opined that it was the pain plaintiff continued to experience that prevented her from working. Dr. Silver opined that a small percentage of people do not improve as expected and develop *Page 7 
chronic pain. As plaintiff had not presented to Dr. Silver since March 3, 2008, he was unable to opine whether she was subsequently able to return to work.
21. Dr. Moody opined that he also would have expected plaintiff's pain to have resolved within two to three months after her work injury; however, symptoms can linger as a result of chronic inflammation. Plaintiff last presented to Dr. Moody on August 27, 2008.
22. On May 27, 2008, Dr. Burke released plaintiff from work "indefinitely" due to her symptoms from the January 14, 2008 injury and continued to keep plaintiff out of work from December 2, 2008 to February 1, 2009. As of the date of the hearing, no physician had released plaintiff to return to work as a result of her continuing back pain from the January 14, 2008 work accident.
23. Plaintiff's prior medical records were introduced into evidence and it is undisputed that plaintiff had a number of unrelated medical conditions for which she was treated, including fibromyalgia. With regard to whether plaintiff's current symptoms were attributable to her fibromyalgia or the January 14, 2008, work injury, Dr. Queen opined that plaintiff's symptoms were not related to her fibromyalgia. In addition, Dr. Burke opined that plaintiff's pain was not related to the fibromyalgia, which had been well controlled. At the hearing before the Deputy Commissioner, plaintiff indicated that at no time did her fibromyalgia prevent her from working for defendant.
24. Based on the greater weight of the evidence of record, the Full Commission finds that plaintiff's pre-existing fibromyalgia was non-disabling at the time of the January 14, 2008 work accident. Plaintiff's back pain and radiculopathy since January 14, 2008, were not related to plaintiff's pre-existing fibromyalgia, but rather were caused by her work accident on January 14, 2008, when plaintiff lifted the full mop bucket. *Page 8 
25. Based on the greater weight of the medical evidence, the Full Commission finds that on January 14, 2008, plaintiff sustained an injury by accident to her lower back in the course of her employment with defendant, when she lifted the mop bucket.
26. As a result of her work injury on January 14, 2008, and by the greater weight of the medical evidence, plaintiff has been unable to return to work for defendant or any other employer due to her continuing back pain through March 23, 2010, the date the Deputy Commissioner's filed the Opinion and Award.
27. The record does not contain evidence of the nature or extent of plaintiff's continuing disability, if any, after March 23, 2010.
28. The treatment rendered and recommended by Dr. Jon M. Silver, Dr. Mark L. Moody, Dr. Margaret Burke and Dr. Steven Queen has been reasonable and necessary to effect a cure, provide relief, or lessen the period of plaintiff's disability.
29. Based on a Form 22 Statement of Days Worked and Earnings ofInjured Employee, plaintiff's average weekly wage is $505.87, yielding a compensation rate of $337.26.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On January 14, 2008, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant in the form of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
2. As a result of her compensable injury by accident, plaintiff is entitled to payment by defendant of total disability compensation at the rate of $337.26 per week beginning January 14, 2008 *Page 9 
and continuing until March 23, 2010, the date of the Deputy Commissioner's Opinion and Award. N.C. Gen. Stat. § 97-29.
3. Plaintiff's entitlement to continuing disability compensation after March 23, 2010 is reserved for later determination after plaintiff has provided additional evidence to determine the nature or extent of any continuing disability.
4. Plaintiff is entitled to payment by defendant of all medical expenses incurred or to be incurred by plaintiff as the result of her injury by accident, including treatment rendered and recommended by Dr. Jon M. Silver, Dr. Mark L. Moody, Dr. Margaret Burke and Dr. Steven Queen, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendant shall pay plaintiff total disability compensation at a rate of $337.26 per week beginning January 14, 2008, and continuing until March 23, 2010. This amount has accrued and shall be paid in a lump sum.
2. Defendant shall pay all related medical expenses incurred or to be incurred by plaintiff as the result of her injury by accident, including treatment rendered and recommended by Dr. Jon M. Silver, Dr. Mark L. Moody, Dr. Margaret Burke and Dr. Steven Queen, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. *Page 10 
4. A reasonable attorney fee of 25% of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel from the accrued amounts.
5. The Full Commission RESERVES the issue of plaintiff's continuing disability, if any, after March 23, 2010, for subsequent determination to be made either by agreement between the parties or by the filing of a request for a new hearing in this matter when additional evidence is available.
6. Defendant shall pay the costs.
This 19th day of August, 2010.
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ LINDA CHEATHAM COMMISSIONER
 S/___________________ DANNY LEE McDONALD COMMISSIONER